**CITIZENS NATIONAL BANK IN GASTONIA, Plaintiff,**

and

**Carolina State Bank, Intervenor,**

v.

**WACHOVIA BANK AND TRUST COMPANY, N.A., and William B. Camp, Comptroller of the Currency of the United States, Defendants.**

No. C–136–WS–71.

United States District Court, M. D. North Carolina, Winston-Salem Division.

Aug. 4, 1971.

Sanford, Cannon, Adams & McCullough, Raleigh, for plaintiff.

Carl J. Stewart, Jr., Gastonia, N. C., for intervenor.

Jordan, Morris & Hoke, Raleigh, N. C., for defendant, Wachovia Bank and Trust Co., N.A.

L. Patrick Gray, III, Asst. Atty. Gen., Washington, D. C., William L. Osteen, U. S. Atty., Greensboro, N. C., Harland F. Leathers and David Epstein, Attys., Dept. of Justice, Washington, D. C., and John E. Shockey and John V. Austin, Office of the Comptroller of the Currency, Washington, D. C., for defendant, William B. Camp, Comptroller of the Currency of the United States.

## MEMORANDUM OPINION

EDWIN M. STANLEY, Chief Judge.

Plaintiff, Citizens National Bank in Gastonia (Citizens Bank), and Intervenor, Carolina State Bank (Carolina State), seek by this action to have declared invalid the approval of William B. Camp, Comptroller of the Currency of the United States (Comptroller), of an application of the defendant, Wachovia Bank and Trust Company, N. A. (Wachovia), of Winston-Salem, North Carolina, for permission to establish and operate a branch bank in the vicinity of Akers Shopping Center, New Hope Road and Franklin Street, Gastonia, North Carolina. Plaintiff and intervenor allege that the approval is invalid because the Comptroller declined, in approving the establishment of the branch, to make the findings which North Carolina General Statute § 53–62(b) requires of the

North Carolina Commissioner of Banks in approving branch applications by State banks.

Following the filing of the pleadings and the intervention of Carolina State, the parties filed motions for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, alleging that there was "no genuine issue as to any material fact and that the moving party [was] entitled to a judgment as a matter of law." A record of the entire administrative proceedings before the Comptroller and lengthy briefs have been filed with the Court.

On November 25, 1970, Wachovia applied for permission to establish a branch at the intersection of New Hope Road and Franklin Street in Gastonia, North Carolina. The plaintiff, Citizens National, protested the application and requested a hearing on Wachovia's application. However, the request for a hearing was subsequently withdrawn and instead Citizens National filed a documentary protest. An affidavit expressing opposition to Wachovia's proposed entry into Gastonia was also filed on behalf of Carolina State, an approved but unopened State bank to be located in Gastonia.

On June 17, 1971, the Comptroller approved Wachovia's application without any written findings whatever with respect to the basis for his approval. The Comptroller advised Citizens National of the approval by letter dated June 18, 1971, which was received on June 21, 1971. This litigation seeking to restrain the opening of the branch was commenced on June 22, 1971.

Following the filing of the complaint in this action, the Comptroller, for some unexplained reason, apparently had a change of heart and decided to prepare a written opinion outlining the basis of his approval of Wachovia's application. The opinion is dated July 7, 1971, and was mailed to counsel for the interested parties shortly thereafter. In the meantime, Wachovia was enjoined from opening its new branch in Gastonia until this matter could be decided on the merits.

The State Commissioner of Banks is given the discretionary authority to approve the establishment of branches by State banks.[1] He is prohibited from giving his approval, however, until he finds that (1) "the establishment of such branch * * * will meet the needs and promote the convenience of the community to be served," (2) "the probable volume of business and reasonable public demand in such community are sufficient to assure and maintain the solvency of said branch * * * and of the existing bank or banks in said community," and (3) the capital of the parent bank and the capital of each of its branches meet certain statutory requirements. The Comptroller is authorized to approve the establishment of a branch national bank if such an establishment is "at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restriction as to location imposed by the law of the State on State banks."[2]

The plaintiff and intervenor concede that Wachovia has sufficient capital to satisfy statutory requirements, but contend that the Comptroller failed to make certain critical findings of fact with respect to the other two criteria, and that the findings he did make with respect to these criteria are unsupported by substantial evidence. Consequently, it is argued that the Comptroller's decision to approve the application of Wachovia was unfair, arbitrary and capricious.

■ There can no longer be any question whatever but that the Comptroller is bound by State law in considering the applications of national banks to establish branch banks. First-Citizens Bank and Trust Company v. Camp, 409 F.2d 1086 (4th Cir. 1969); First National Bank of Logan v. Walker Bank & Trust Company, 385 U.S. 252,

1. N.C.G.S. § 53–62(b).

2. 12 U.S.C. § 36(c) (2).

87 S.Ct. 492, 17 L.Ed.2d 343 (1966), and First National Bank in Plant City, Fla. v. Dickinson, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969). It was because of the stubbornness of the Comptroller in failing to perform his clearly defined duty that caused this litigation to be instituted. It is as unfair and expensive to applicant banks as well as to protesting banks to engage in costly litigation because of the refusal of a high Government official to perform his duties in accordance with clearly defined principles of law. In his belated opinion, the Comptroller states that he still has serious reservations about the decision of the Court of Appeals for this Circuit in First-Citizens Bank and Trust Company v. Camp, *supra*, and that he was entering a written opinion without waiving his reservations. Of course, as earlier noted, the *First-Citizens Bank* case does nothing more than follow the law as set out in First National Bank of Logan v. Walker Bank & Trust Company, *supra*.

Gaston County has a population in excess of 148,000, and has the sixth largest population of North Carolina's 100 counties. The County is heavily industrialized with over 323 manufacturing concerns. It has excellent transportation facilities and enjoyed an unusual economic growth between 1960 and 1970. It is an important retail and wholesale distribution center and is rapidly growing in these respects. Two other large banks with State-wide banking operations presently maintain branches in the proposed service area of the Wachovia branch. The First Citizens Bank & Trust Company of Smithfield, North Carolina, with deposits of approximately 650 million dollars, operates five branches in the area, and the First Union National Bank of Charlotte, North Carolina, with deposits of nearly 900 million dollars, operates four branches in the area. In addition, the plaintiff, Citizens National, with deposits of nearly 60 million dollars, operates its main office in the City of Gastonia and maintains six branches in the primary service area of Wachovia's proposed branch. The intervenor, Carolina State, has been authorized to open a State bank in Gastonia, but will not commence business until September of this year. With respect to the critical "needs and convenience" and "solvency" criteria, the Comptroller found:

"First, approval of this application will meet the needs and promote the convenience of the Gastonia community and particularly the greater Gastonia-Gaston County area which applicant expects the branch to serve. While the primary service area of Wachovia's proposed branch is heavily oriented toward the textile-apparel industry, this industry is well diversified in Gaston County, and has remained a more stable employer there than in other areas which also rely heavily on this industry. The textile industry is a basic industry whose products are used extensively by other industries, and it appears to represent the source of an increasing portion of the consumer goods demanded by rising living standards. The Comptroller, moreover, concludes that the economic outlook for the service area of Wachovia's proposed branch is healthy, and may be expected to continue the stable economic and population expansion it has enjoyed in the past. Although the rate of deposit and loan growth predicted by Wachovia may be slightly optimistic, it is apparent that the existing $1 million in deposits, $8½ million in loans, and $4.8 million in trust business already claimed by applicant within the service area projected for the new branch [footnote omitted] will provide a substantial and sound foundation for further growth and assure a profitable operation within a reasonable period of time. Indeed, this substantial existing business compels the conclusion that applicant already competes in large measure with the banks operating in the Gastonia/Gaston County area from its extensive branch operations in neighboring Charlotte and Mecklenburg County. Thus, the open-

ing of an office of this large, sophisticated, and highly successful bank in Gastonia would represent not so much an interjection of completely new competition as the more convenient offering of services which it is already providing, with some degree of success, from its offices in neighboring counties. In addition, there is strong reason to conclude that an ability to share in the growth of the Gastonia/Gaston County community through a local office would stimulate applicant to increase its already significant commitment of loan capital in this community. Such an entry would thus undoubtedly give a real push to the area's economic development while providing an additional competitive source of banking services. The existing business of a more sophisticated type which applicant already claims from the proposed service area is substantial but can only be a small indication of the total demand for its services which would be developed by the constructive, convenient competition of a local office. For example, the low number of estates utilizing a corporate executor in Gaston County, when compared to other North Carolina counties, is indicative of a need for such services which could be well met by Wachovia's large and experienced trust department. The amount of Wachovia's existing international banking business originating in this important manufacturing and commercial center further indicates a need for such services, which the Comptroller believes could be met more fully and conveniently by the large and experienced international banking division of the applicant bank. Furthermore, based upon the evidence presented during the administrative process, the Comptroller believes that a need exists in this area for additional sources of automobile financing and mobile home financing as well as for certain advanced commercial banking services such as a cash management program which are offered by this applicant.

"Second, the probable volume of business and reasonable public demand in the Gastonia-Gaston County area which the applicant proposes to serve are sufficient to assure and maintain the solvency of this branch and that of the existing banks in the community. The present and potential requirements for banking services in the Gastonia/Gaston County area are already large and appear likely to grow at an accelerated pace. During the four year period 1966–1970, total deposits and particularly savings and time deposits of individuals, partnerships, and corporations increased at a vigorous rate. Based upon this record, as well as anticipated population and economic expansion projected for Gaston County, the Comptroller believes that the Wachovia branch will be able to achieve profitable operations within a reasonable period of time without affecting adversely the level of banking operations or profitability enjoyed by the existing banks in this area. Citizens National, First Citizens, and First Union are sufficiently large and well-entrenched in the Gastonia/Gaston County market that more convenient competition by Wachovia should serve only to stimulate a reassessment of their services and, ultimately, a greater participation in and profit from the continued growth of the community. Contrary to the assertions of the as yet unopened Carolina State Bank, the Comptroller believes that the size and anticipated expansion of the Gaston County banking market, as well as the different orientation of Wachovia, will insure that the establishment of this branch will not damage the stability or profitability of that bank when it is ultimately opened." [Footnote omitted]

On the merits, if the Comptroller has now made, even though belated and grudgingly, legally sufficient findings and conclusions on the criteria prescribed by N.C.G.S. § 53–62(b), and such findings are supported by substantial evidence, his action would be neither arbitrary nor capricious and must be ap-

proved. First National Bank of Smith-field, North Carolina v. Saxon, 352 F.2d 267 (4th Cir. 1965).

■ The substantial evidence rule is a familiar principle of administrative law. "Substantial evidence is 'enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' Labor Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660 (1939)." Illinois Central Railroad Co. et al. v. Norfolk & Western Railway Co. et al., 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966). In reviewing the action of an administrative agency, it is not the function of the courts to resolve conflicts in evidence, and if the findings of the administrative agency "are supported by substantial evidence, the courts are bound to accept them." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). Since it is conceded that Wachovia meets the statutory capital requirement, and since State law permits the establishment of a branch bank at any place in the State, the two critical criteria upon which the Comptroller was required to make findings are (1) the need and convenience of the community to be served, and (2) whether the probable volume of business in such community is sufficient to assure and maintain the solvency of the proposed branch and the existing banks in the community.

■ While the administrative proceedings, and particularly the formal opinion entered by the Comptroller on July 7, 1971, are far from satisfactory, resulting, the Court believes, from the unwillingness of the Comptroller to accept and abide by clearly stated principles of law, it nevertheless cannot be said that there are insufficient findings to support his decision. Additionally, a detailed examination of the entire administrative record discloses that the Comptroller's findings and conclusions are substantial and rationally supported, and are neither arbitrary nor capricious.

It necessarily follows that the motions of the plaintiff and the intervenor for summary judgment should be denied, and that the motions of the defendants for summary judgment should be granted.

A judgment will be entered accordingly.