STATE OF NORTH CAROLINA ON RELATION OF THE BANKING COMMISSION, AND BRANCH BANKING AND TRUST COMPANY v. LEXINGTON STATE BANK

No. 75

(Filed 12 April 1972)

1. Banks and Banking § 1— establishment of branch bank — requisite findings

As a condition precedent to the establishment of a branch bank, the Commissioner of Banks must find that such branch will meet the needs of the community and that the probable volume of business will be sufficient to assure and maintain the solvency of such branch. G.S. 53-62.

2. Banks and Banking § 1— applications for two branches — consolidation for hearing — separate findings and conclusions

While two applications by a bank to establish two branches in the same city may be consolidated for hearing, each application must be treated as a separate application and be approved or denied on the basis of the evidence relating thereto, and separate findings and conclusions must be made as to each application.

3. Banks and Banking § 1— establishment of branch bank — solvency requirements

The solvency provisions of G.S. 53-62 for establishment of a branch bank are not met by the fact that the parent bank and all its branches together meet the solvency test, it being required that each new branch not endanger the solvency of the parent bank or the solvency of another bank in the field.

APPEAL by defendant from the decision of the Court of Appeals filed August 18, 1971, affirming judgment in favor of the plaintiff petitioner entered in the Superior Court of WAKE County by *Clark, J.,* at its September 14, 1970 Civil Session. A dissent was filed to the decision of the Court of Appeals. The respondent appealed as a matter of right under G.S. 7A-30(2). This case was docketed and argued at the Fall Term 1971 as No. 125.

Two applications were filed before the Commissioner of Banks (Commissioner) by Branch Banking and Trust Company (Branch) for authority to open two branches in Lexington. One was to be designated "Lexington Branch" and the other "Lexington Drive-In Branch." The Lexington State Bank (Lexington) filed a protest to each application.

The Commissioner of Banks (Commissioner) approved the applications. On review, the North Carolina Banking Commis-

sion (Commission) conducted an extensive investigation and heard evidence of interested parties. The two applications were consolidated and heard as a single proceeding. Throughout the hearing the petitioner's evidence dealt with the two applications as a single request for two branches. After the consolidation there was no attempt to relate the evidence, or the findings, specifically to either application. The two were treated as a single application.

On review by the Commission, facts were found and the Commissioner concluded: "4. All of the requirements for approval of the establishment of branches of The Branch Banking and Trust Company in Lexington, North Carolina, prescribed by applicable North Carolina law have been met." By order, the Commissioner of Banks approved the applications and, after hearing, the Banking Commission ratified, confirmed, and approved them.

The Lexington State Bank appealed the decision to the Wake County Superior Court. On review, Judge Clark found the facts and conclusions of the Commission were supported by the evidence and on September 25, 1970, entered an order ratifying, confirming, and approving the establishment "of two branches in Lexington." From the order, the respondent bank appealed.

On August 18, 1971, the Court of Appeals, Judge Brock dissenting, affirmed the order of the Superior Court. The respondent appealed.

*Jordan, Morris and Hoke by John R. Jordan, Jr., and William R. Hoke; Walser, Brinkley, Walser & McGirt by Walter F. Brinkley for defendant appellant.*

*Carr and Gibbons by F. L. Carr, DeLapp, Ward & Hedrick by Hiram H. Ward for plaintiff appellee.*

HIGGINS, Justice.

[1] As a condition precedent to the establishment of a branch, the Commissioner of Banks must find that such branch will meet the needs of the community and the probable volume of business will be sufficient to assure and maintain the solvency of such branch. G.S. 53-62 provides: "Such approval shall not be given until he (Commissioner) shall find (i) that the estab-

lishment of such branch or teller's window will meet the needs and promote the convenience of the community to be served by the bank, and (ii) that the probable volume of business and reasonable public demand in such community are sufficient to assure and maintain the solvency of said branch or teller's window and of the existing bank or banks in said community."

[2, 3] We conclude from the wording of the pertinent statute that each application for a branch must be treated as a separate application and be approved or denied on the basis of the evidence relating thereto taken before the Commissioner or the Commission. The requirement is not met in the absence of a separate finding. We do not mean to say that two applications for branches may not be consolidated and heard together. What we do say is that under the statute the evidence and finding must be sufficient to support each application independent of the other. No provision is made in the act for the approval of any branch that fails to meet the requirements. The purpose is obvious. A branch may not be established which would be a financial failure or would endanger the solvency of another bank already in the field. The petitioner argues that solvency provisions of our statute are met if the parent bank and all its branches together meet the solvency test. Branch cites *First Citizens Bank and Trust Company v. Camp*, 409 F. 2d 1086 in support of the total solvency test.

The decision of the Court of Appeals makes it clear that the decision applies only to the showing in the First Citizens case, calling attention to the absence of any North Carolina court decision construing G.S. 53-62. The solvency tests under the statute are twofold. Each new branch must not endanger the solvency of the parent bank and it must not endanger the solvency of another bank already in the field. We are governed by the provisions of the act as written. Fixing rules comes within the function of the General Assembly. Unless the rules violate some fundamental (constitutional) right, the Commissioner of Banks, the Banking Commission, and the courts are bound by them. The purpose to be accomplished by what appear to be rather stringent rules was to protect the solvency of banks. A bank failure is a major disaster to the community served by the bank.

Some of the members of the General Assembly which rewrote G.S. 53-62 were old enough to recall the day in 1933

when all banks were ordered closed because depositors were transferring funds from bank vaults to hiding places in their homes.

It is well known that a rumor of insolvency may start a run on a bank. To minimize the danger, was the motivation for G.S. 53-62. The purpose was to require that each separate branch contribute to the solvency of the system.

We conclude there must be an independent finding with respect to each branch. Manifestly two or more branches may not be lumped together and approved as a single unit. If two may be consolidated, then any number may be if the total meets the test. G.S. 53-62 requires that each branch meet the test.

For the reasons heretofore assigned, it is now ordered that the applications be remanded to the Banking Commission for separate findings and conclusions as to each individual application for a branch. To that end the decision of the Court of Appeals is reversed and the proceeding will be remanded to the Banking Commission for disposition in accordance with this opinion.

Reversed and remanded.