**SECURITY BANK AND TRUST COMPANY, Plaintiff,**

v.

**John HEIMANN, Comptroller of the Currency of the United States and First National Bank of Albemarle, Defendants.**

**No. C–78–98–S.**

United States District Court,
M. D. North Carolina,
Salisbury Division.

May 25, 1978.

John R. Jordan, Jr., and William R. Hoke, of Jordan, Morris & Hoke, Raleigh, N. C., for plaintiff.

H. M. Michaux, Jr., U. S. Atty., Greensboro, N. C., Gary L. Ryan, and Marilyn D. Britwar, Washington, D. C., for John Heimann.

Richard Lane Brown, III, of Brown, Brown & Brown, Albemarle, N. C., Russell M. Robinson, II, and Michael A. Almond, of Fleming, Robinson & Bradshaw, Charlotte, N. C., for First National Bank of Albemarle.

## MEMORANDUM OPINION

HIRAM H. WARD, District Judge.

This action was commenced when Security Bank and Trust Company (Security), a state banking association chartered under the laws of the State of North Carolina, filed a complaint in this court for declaratory and injunctive relief. Security seeks to overturn the approval of the Comptroller of the Currency (Comptroller) of an application filed by First National Bank of Albemarle (FNB of Albemarle) for permission to establish a branch bank at the corner of North Main Street and East Seventh Street, Oakboro, Stanly County, North Carolina. Subsequently all parties filed motions for summary judgment. The complete administrative file compiled by the Comptroller has been made a part of the Court's record in this matter.

This has been a hard fought case, no doubt a result of personal as well as business factors. Essentially from 1947 to the present, Security has had the only bank in Oakboro. From February 1, 1966, to August 5, 1977, Mr. William C. Love, Jr., was in charge of the branch banking operations of Security in Oakboro. He was evidently very active and very well liked in the community. On August 5, 1977, Love left the employment of Security; he began working for FNB of Albemarle on August 8, 1977. On August 18, 1977, a mere ten days later, FNB of Albemarle submitted an application with the Regional Administrator of National Banks, Fifth National Bank Region, Richmond, Virginia, to establish a branch office in Oakboro. The great majority of the work which resulted in the application was performed by Love. In addition, a significant amount of Love's banking knowledge that was acquired while he was employed by Security was used in the application. Specifically, Love utilized his inside knowledge of Security's financial posture in Oakboro to establish financial justification for the new FNB of Albemarle branch, and he utilized his popularity with the people of Oakboro to, at the minimum, create enthusiasm for the opening of a second banking facility in Oakboro. It goes without saying that Love will be in charge of the Oakboro branch of FNB of Albemarle when it opens.

The Comptroller is the chief administrator of the Office of the Comptroller of the Currency, a bureau of the Treasury Department. He is charged among other things with the administration of the National Bank Act, 12 U.S.C. § 1, et seq. As Comptroller, he is granted the authority by Congress to investigate and approve or disapprove applications to establish new banks, to investigate and approve or disapprove applications by national banks to establish branches, and to supervise the operations of

the national banking system through various procedures including periodic examinations of banks. The Regional Administrators for the National Banks are, of course, aligned under the Comptroller in his organizational structure.

As previously mentioned, on August 18, 1977, FNB of Albemarle, a national banking association with its main office in Albemarle, Stanly County, North Carolina, filed an application requesting permission to establish a branch at the corner of North Main Street and East Seventh Street, Oakboro, North Carolina. The application was accepted for filing on August 24, 1977. It was processed in accordance with the Comptroller's published administrative procedures.

The Comptroller's Regional Office notified all banks in the Stanly County area of the receipt of the application for filing and solicited their comments on the application. In addition, FNB of Albemarle published a notice of application in a newspaper of general circulation in Stanly County. A protest and a request for hearing were received from Security.

A public file consisting of the application with supporting data and supplementary information, together with all data and information submitted by interested parties in favor of or in opposition to the application, was compiled. The public file was made available for inspection by all interested parties.

In response to a request by Security, an informal public hearing was conducted on October 28, 1977, in the Office of the Regional Administrator for the Fifth National Bank Region in Richmond, Virginia.[1] Each party was given the opportunity to present opening statements, witnesses, and documentary exhibits. The opportunity was available to question the witnesses offered by the other parties to the proceedings and to present closing statements. A complete transcript of the proceedings was made, and it became a part of the administrative file.

Thereafter, the record as developed and supplemented with post-hearing briefs was reviewed by the Regional Director for Corporate Activities and the Regional Administrator. Each added his analyses and recommendations. The record then was forwarded for review to members of the Comptroller's Washington Staff. The application of FNB of Albemarle was approved by the Deputy Comptroller on February 20, 1978. All parties were notified of this decision by letters dated February 27, 1978.

On March 8, 1978, Security filed its complaint with this court asking for a preliminary injunction to prohibit the Comptroller from authorizing the establishment and operation of the new branch in Oakboro and for declaratory relief indicating that the issuance of authority to establish a FNB of Albemarle branch in Oakboro would be contrary to law. On March 31, 1978, FNB of Albemarle filed a motion for summary judgment. On April 19, 1978, Security moved for summary judgment. The Comptroller on May 8, 1978, also moved for summary judgment. Each party to the action —Security, Comptroller, and FNB of Albemarle—contends that it is entitled to summary judgment based on the record compiled by the Comptroller.[2]

1. A "hearing" is perhaps an inappropriate word. 12 C.F.R. §§ 5.4 and 5.5 provide that an opportunity to be heard may be requested and shall be provided if requested. The procedures followed are found in 12 C.F.R. § 5.10 and discussed in note 3, *infra*.

2. All parties in their initial filings relied on *First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481 (4th Cir. 1970), in arguing their respective positions regarding the suitability of injunctive relief. This Court has serious reservations whether *First-Citizens Bank & Trust Co., supra*, is the appropriate standard. It appears that *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.*, 550 F.2d 189 (4th Cir. 1977), now controls.

Security enclosed with its initial brief for a preliminary injunction an affidavit of J. G. Rutledge, III, President of Security, indicating the loss to be incurred if fifty percent of Security's business in Oakboro was usurped by the Oakboro branch of FNB of Albemarle. FNB of Albemarle has moved to have this affidavit stricken from the file because it is not part of the administrative record and, therefore, inadmissible under *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). The Court

Federal law authorizes the Comptroller to approve the opening of branch banks by national banking associations under certain circumstances. 12 U.S.C. § 36(c) reads in pertinent part as follows:

(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: . . . (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by application or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.

The North Carolina law governing the establishment of branch banks is set forth in North Carolina General Statutes § 53–62(b) which reads as follows:

(b) Any bank doing business under this Chapter may establish branches or teller's windows in the cities or towns in which they are located, or elsewhere, after having first obtained the written approval of the Commissioner of Banks, which approval may be given or withheld by the Commissioner of Banks, in his discretion. The Commissioner of Banks, in exercising such discretion, shall take into account, but not by way of limitation, such factors as the financial history and condition of the applicant bank, the adequacy of its capital structure, its future earnings prospects, and the general character of its management. Such approval shall not be given until he shall find (i) that the establishment of such branch or teller's window will meet the needs and promote the convenience of the community to be served by the bank, and (ii) that the

probable volume of business and reasonable public demand in such community are sufficient to assure and maintain the solvency of said branch or teller's window and of the existing bank or banks in said community.

 It is well settled that the Comptroller must look to state law to determine if a branch can be opened. *First National Bank of Logan v. Walker Bank & Trust Co.*, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). If the Comptroller followed the state law, his decision must be affirmed unless it was arbitrary, capricious, or an abuse of discretion. *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1976) (Per Curiam).

 In its brief Security appeared to be arguing that a more strenuous test is appropriate to test the decision of the Comptroller in this case. While it is true that a hearing was conducted in the present case at the request of Security, and no hearing was conducted by the Comptroller in *Camp v. Pitts, supra,* this Court finds that distinction without significance. *Camp v. Pitts, supra,* clearly held that the appropriate standard to be used by a district court in reviewing an administrative agency's justification for informal action is not the substantial evidence test which is appropriate when reviewing findings made on a hearing record but rather whether the Comptroller's adjudication was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Where a fact finding hearing is held, clearly the standard of review is substantial evidence. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964). However, where as here the hearing was merely to gather facts, that is a fact gathering procedure,[3] the standard of re-

agrees that the affidavit would not be admissible for purposes of summary judgment on the administrative record but does feel that the Court could utilize the affidavit in weighing the relative harm to be incurred should the issue of preliminary injunctive relief be reached. For that reason the affidavit will not be stricken from the file, although it has not been utilized

by the Court in ruling on the summary judgment question.

3. The informal public hearing was conducted in accordance with 12 C.F.R. § 5.10 and as such was quite different from a due process or full blown adversary hearing. Specifically witnesses are not sworn and can refuse to answer any

view is the lesser arbitrary and capricious test.[4] The decision of the Comptroller authorizing the opening of a branch bank must be affirmed unless it was arbitrary and capricious. *Camp v. Pitts, supra; City National Bank v. Smith,* 168 U.S.App.D.C. 221, 513 F.2d 479 (1975); *First Bank & Trust Co. v. Smith,* 509 F.2d 663 (1st Cir. 1975); *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371 (8th Cir. 1974), *cert. denied,* 421 U.S. 390, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *Bank of Commerce of Laredo v. City National Bank of Laredo,* 484 F.2d 284 (5th Cir. 1973).

In accordance with N.C.G.S. § 53–62(b)(i) the Comptroller must find that the establishment of the Oakboro Branch of FNB of Albemarle "will meet the needs and promote the convenience of the community." In the comments attached to the application, the Regional Director for Corporate Activities reviewed the facts relative to this point.

> The record on this application clearly demonstrates that its establishment will meet the needs and promote the convenience of the community of Oakboro. Records, including hearing transcripts and briefs, contain opinions on the subject. Protestant relies basically upon survey and testimony of Mitchell Marketing who says existing bank is a full service bank and is taking care of the needs of the community. Applicant listed on page 22, item 7 of application, six (6) services which proposed branch will offer that are not being offered by the competing bank in the service area. Letters from prominent individuals in the community indicate unmet banking needs and inconvenience. Delays in obtaining banking services offered are apparent at existing bank. Chief of Police of Oakboro points out, in letter, that traffic back up at existing drive-in window creates a traffic hazard. Some 465 adult persons petitioned this Office for an additional banking office to meet the needs and promote the convenience of the community.
>
> To further verify whether there were unmet banking needs and convenience of Oakboro, we requested and received an opinion of our Charlotte examiner. A copy of his findings are attached. The examiner clearly indicates unmet banking needs in Oakboro and these services are offered by applicant. The same applies to convenience. Applicant, individuals and our examiner says there is a definite need for first and second mortgage loans, loans to certain type individuals, loans to small businesses and existing branch is frequently overcrowded. (Administrative File at 009.)

▮ The facts presented by the Regional Director are present in the record.[5] To be

---

questions from the participants to or from the presiding officer or members of the panel. 12 C.F.R. § 5.10(b). Formal rules of evidence do not apply. 12 C.F.R. § 5.10(c). The number of witnesses presented and the amount of time available can be limited by the Regional Administrator, presiding officer, or any designated member of the panel. 12 C.F.R. § 5.10(d).

4. In *Camp v. Pitts, supra,* the Supreme Court stated "[that the appropriate standard of judicial review of the Comptroller's decision in matters of this nature] is not the 'substantial evidence' test which is appropriate when reviewing findings made on a hearing record, 5 U.S.C. § 706(2)(E) [5 U.S.C.S. § 706(2)(E)]. Nor was the reviewing court free to hold a de novo hearing under § 706(2)(F) and thereafter determine whether the agency action was 'unwarranted by the facts.' . . . The appropriate standard for review was accordingly, whether the Comptroller's adjudication was 'arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law,' as specified in 5 USC § 706(a)(A)."

5. The opinion of the Charlotte Bank Examiner was not attached to the recommendation when the official administrative file was submitted to this Court for review. However, the Court requested and received the Bank Examiner's report. Copies were likewise furnished counsel for the parties. The report more than substantiated the position taken by FNB of Albemarle and lends strong support for the Comptroller's acceptance of the testimony and evidence offered by FNB of Albemarle and his reluctance to entirely believe the facts proffered by Security.

For authority authorizing the Comptroller to dispatch a National Bank Examiner to conduct this type investigation see 12 C.F.R. § 5.1. Counsel for Security contends that the manner in which the Bank Examiner was assigned to this task was basically unfair. Specifically he

sure other facts are also present which, if believed, cast some doubt on the facts recited by the Regional Director. But it is not for the Court to reweigh the facts and make decisions in areas where the administrative agency possesses more experience than the Court. *First-Citizens Bank and Trust v. Camp*, 409 F.2d 1086 (4th Cir. 1969).

Security relies on Judge Dupree's opinion in *Bank of New Bern v. Wachovia Bank & Trust Co., N.A.*, 353 F.Supp. 643 (E.D.N.C. 1972), to argue that the facts in the present case do not as a matter of law meet the needs and convenience test. To be sure *Bank of New Bern, supra,* says that the needs and convenience test cannot be met by simply providing services which are already available from the existing banks in the area or by providing services which might be needed in the future where there exists no evidence of future economic growth in the record.

However, *Bank of New Bern, supra,* is clearly distinguishable. First, *Bank of New Bern* involved Wachovia's aborted entry into the banking community of New Bern, North Carolina, which at that time was already experiencing head to head competition between the Bank of New Bern, First-Citizens Bank & Trust Company, and Branch Banking and Trust Company. In the present case FNB of Albemarle is attempting to open a small branch in a town which has experienced no direct banking competition since Security opened its branch there in 1947. There is, of course, something good to be said of competition, and it seems to this Court that under the facts of this case, unlike the facts of *Bank of New Bern, supra,* that fact alone might meet the needs and promote the convenience of the community.[6] An additional problem troubled Judge Dupree in *Bank of*

*New Bern.* Specifically, that case implied that before the ability to provide services which were not then needed by the community could be used to justify the needs and convenience test, there must be some evidence "that prospects for future economic growth are favorable." Judge Dupree was unable to so find in the *Bank of New Bern. Bank of New Bern, supra,* however, was decided prior to the Supreme Court's decision in *Camp v. Pitts,* 411 U.S. 138, 92 S.Ct. 1241, 36 L.Ed.2d 106 (1973), and Judge Dupree applied the substantial evidence test in testing the facts present in the record. In the present case facts do exist in the record which, if believed, indicate that growth is present or will commence in the very near future. It cannot be said that by the Comptroller's belief of and reliance on these facts as opposed to others in the record that his decision was arbitrary and capricious.

The second part of the test made applicable to the Comptroller by North Carolina law, N.C.G.S. § 53–62(b)(ii) requires "that the probable volume of business and reasonable public demand in such community [Oakboro] are sufficient to assure and maintain the solvency of said branch . . . and of the existing bank . . . in said community."

Security has argued strenuously that this means that before a new branch can be opened in Oakboro, both the new branch and the Oakboro branch of Security must be able to maintain solvency. Security has artfully traced the development of this legal proposition from *First-Citizens Bank & Trust Co. v. Camp,* 409 F.2d 1086 (4th Cir. 1969), through *Banking Commission v. Lexington State Bank,* 12 N.C.App. 232, 182 S.E.2d 854 (1971), to *Banking Commission v. Lexington State Bank,* 281 N.C. 108, 187 S.E.2d 747 (1972). The latter Banking Commission case of course reversed the for-

---

contends that the Examiner was only provided with the application of FNB of Albemarle and that the Examiner was dispatched after the informal public hearing had been conducted. This Court finds nothing irregular or improper with asking an examiner to "verify" an application after an informal hearing has been conducted. 12 C.F.R. § 5.1.

**6.** However, this is not to imply that the Oakboro branch of Security is meeting all of the needs of the Oakboro community. The report of the National Bank Examiner clearly indicates that that is not the case.

mer. The Court has serious reservations concerning Security's reading of the statute in question and the cases cited. The plain wording of the relevant statute, N.C.G.S. § 53–62(b)(ii), indicates that the new branch and the existing bank or banks must meet the solvency test. The statute does not say the new branch and the existing branch or branches in the area.[7]

But this need not consume the Court's time because the Comptroller explicitly found that the Oakboro branch of FNB of Albemarle would not threaten the solvency of either Security or FNB of Albemarle and additionally that the Oakboro branch of Security, as well as the new Oakboro branch of FNB of Albemarle, would be solvent. The facts gathered clearly support this finding.

The deposits in the Oakboro branch of Security climbed two million dollars to a total of 7.5 million dollars in deposits for 1977. Loans increased 2.7 million dollars in 1977. Net profit from the Oakboro branch of Security was $113,000 in 1976. Profits from the nine months ending on September 30, 1977, were $91,000 which, on an annualized basis, indicate profits of $122,000 for 1977. This is a very high rate of return on average assets of 6.4 million dollars.

The projections made by FNB of Albemarle for its proposed Oakboro branch for its first year were 2.4 million dollars in deposits and loans of 1.6 million dollars. The Regional Director for Corporate Activities found these projections reasonable, and the Court is in agreement. "Recent trends in the volume of business at the existing branch clearly indicate that the probable volume is sufficient to support both banking offices." Administrative File at 011.

Security argued that all the evidence before the hearing panel or in the administrative record clearly indicates that the Oakboro branch of Security could not remain solvent if FNB of Albemarle opened a profitable branch in Oakboro. This Court does not view the facts presented by the administrative file that narrowly. The high increase in deposits and loans coupled with the excellent rate of return of the Oakboro branch of Security clearly allow the Comptroller to conclude that Oakboro can support two branch banks. The Court cannot say that such findings are arbitrary and capricious.

■ In summary the Court finds that the Comptroller correctly followed the relevant North Carolina law and that his decision is not arbitrary and capricious. Again it is not the function of this Court to reweigh the evidence gathered by the Comptroller and substitute its judgment for the judgment of the Comptroller and his staff. *First-Citizens Bank & Trust Co. v. Camp, supra.* To be sure evidence exists in the administrative file which, if believed by the Comptroller, would support a contrary decision. However, the overwhelming evidence clearly supports the decision reached by the Comptroller. The Comptroller would be entitled to summary judgment even under the stricter "substantial evidence" test. Simply put the decision of the Comptroller was not arbitrary and capricious and is affirmed by this Court. *Camp v. Pitts, supra.* Having concluded that the defendants' motions for summary judgment should be allowed, it follows that the plaintiff's motion for injunctive relief becomes moot.

Therefore, it is hereby ORDERED that the plaintiff's motions for injunctive relief and for summary judgment are denied and the defendants' motions for summary judgment are hereby allowed. A judgment will be entered accordingly.

---

7. Security's use of the quote "there must be an independent finding with respect to each branch. . . . G.S. § 52–62 requires that each branch meet the test" 187 S.E.2d 747, 749 simply misreads the opinion. *Banking Commission v. Lexington State Bank, supra,* involved an application to establish two branches in Lexington, North Carolina. It did not involve a situation where an existing branch of a parent bank challenged the opening of a proposed branch of another bank. Indeed, in the Lexington State Bank cases there was no existing branch. There the creation of two proposed branches was contested by an existing bank.