LAKE DE SMET RESERVOIR COMPANY, a Wyoming corporation,

*Plaintiff and Respondent,*

vs.

ALEX KAUFMANN,

*Defendant and Appellant.*

(No. 2702; January 17th, 1956; 292 Pac. (2d) 482)

88

For the defendant and appellant, the cause was submitted upon the brief and also oral argument of Henry A. Burgess of Sheridan, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of James Munro and D. P. B. Marshall, both of Sheridan, Wyoming, and oral argument by Mr. Munro.

## OPINION

PARKER, Justice.

This is a case dealing with "Surplus Water," which words, although not hereafter specially indicated, will be taken to mean:

The water impounded by a reservoir owner, over and above that necessarily used for irrigation or other beneficial purposes in connection with his own lands. See §§ 71-616 and 71-701, W.C.S. 1945. [The definition in § 71-217, W.C.S., 1945, is inapplicable in this case.]

The instant action was brought by Lake DeSmet Reservoir Company, plaintiff, to enforce payment for surplus water furnished to defendant Alex Kaufmann, a Johnson County rancher. For convenience, the parties will be designated herein the same as during the trial.

The case was tried to the court as a contract type of action, it being alleged and proved that defendant had made application for the purchase of surplus water

for irrigation purposes, agreeing to pay therefor at the usual and reasonable rate, which rate had, prior to the time of suit, been found by the Board of Special Commissioners to be three dollars per acre foot. The court gave judgment for plaintiff against defendant at the rate of three dollars per acre foot of surplus water furnished defendant for

(a) the year 1953, when defendant had applied to plaintiff for purchase of the surplus water under the provisions of § 71-616, W.C.S., 1945, in the amount of $768 .00 plus interest, and

(b) the year 1954, when defendant had received the surplus water from plaintiff pursuant to a temporary restraining order of the trial court requiring the water to be so furnished, in the amount of $927.00 plus interest.

From this judgment the defendant has appealed, urging several errors which will be discussed herein.

Defendant admits receiving the water and admits that *some* payment should be made therefor, but raises six reasons why the trial court's decision was wrong. Briefly stated in the order in which we shall discuss them, they are:

(1) the Board of Special Commissioners hearing was not fair and impartial, and the rate set by the board was not just and reasonable;

(2) defendant was not allowed to inspect plaintiff's books and documents;

(3) the evidence was insufficient to support the judgment.

(4) plaintiff had no right to divert and store the water;

(5) any such right that did exist had been abandoned; and

(6) plaintiff was a common carrier and therefore under the control of the Public Service Commission.

It is difficult to discuss separately and without reciprocal consideration the first three of these alleged errors since they are so closely related. Viewed together, they seem to highlight defendant's principal complaint, i.e., the board employed an improper method of determining the value of surplus water, and this was not corrected by the district court.

Analyzing complaint number (1) above, we find that the evidence failed to show the board to have been unfair or partial. However, the nature of the hearing indicated that there was no notice or opportunity for interested persons to appear and present evidence as to a just and reasonable rate; and there was inadequate time for the board to give other than cursory consideration to any facts in its possession. The legislature in 1955 amended § 71-616, W.C.S., 1945, to provide certain requisite formalities of such a meeting of the Board of Special Commissioners, thus insuring the constitutional right of due process; but we think that even before the last amendment the statute, by implication, required a hearing substantially similar to the one now required by the law.

The fact that Mr. Clyde Wood, the superintendent of Water Division No. 2, in 1953 was paid money by plaintiff for services rendered and in 1954 at the time of the trial was owed money by plaintiff for services rendered did not, per se, render the hearing unfair and partial. Nevertheless, a member of a judicial, quasi-judicial, or administrative body who finds himself interested either directly or indirectly in the result of a hearing is under an obligation to disqualify himself.

" * * * an officer cannot lawfully act as the agent of one person where the private agency will come

in conflict with his official duties. To act for one of the parties implies an interest adverse to the other. * * * " 43 Am. Jur., Public Officers, § 266.

The necessity for disqualification is not relieved by the fact that there may be no actual interest of the official in conflict with the duties of his office, because the best administration of our laws requires not only that the officers be fair, impartial, and disinterested, but that they do not give an appearance to the contrary.

Had Mr. Wood withdrawn from the board during the hearing on this matter, the remaining members, being a quorum of the board could have proceeded with the establishment of the rates. In the absence of a statute providing otherwise, where authority is conferred on an administrative body of three or more members, such authority may be exercised by a majority of the members of the body or of a quorum. See 73 C.J.S., Public administrative Bodies and procedure, § 21.

Since the board could have acted in this case without Mr. Wood, it is unnecessary to discuss the method of replacing an essential member of an administrative board who becomes temporarily disqualified or unable to act. However, the lack of any statute delineating the procedure to be taken in such a case is a matter of some importance and one which the legislature may wish to remedy.

Whether the rate set by the Board of Special Commissioners was "just and reasonable" can hardly be determined from the record in this case, since insufficient facts appear to show what the basis of the board's decision was; but the views of the parties regarding the factors which the board should have considered warrant some discussion.

Plaintiff during the case advanced various theories as to the basis of defendant's liability: (a) according

to his ability to pay, (b) at the market value, (c) at a rate similar to the charge made on the Kendrick project, and (d) a reasonable charge in the light of the kind, amount, and value of the crops produced by the aid of the surplus water.

Defense disagreed with each of such advanced criterion and argued that surplus water cannot be properly evaluated on the same basis as personal property or commodities readily available to all persons. Under his theory, the value of property on the open market may be fairly determined by what people will pay for it, actuated by the effects of supply and demand; while articles vital to certain persons but owned or controlled solely by others are, by their very nature, beyond the effects of the law of supply and demand and if unregulated become a monopoly subject to grave price abuses.

Defendant also presented the philosophy that it is unfair to base the value of any certain year's surplus water upon a fair return on the selling price of a segment of an owner's corporate stock, upon the value of the increase in the crops produced, or upon the highest price a thirsty rancher may be willing to pay during a crisis. Defendant says that the proper annual charge for surplus water should be related to the original costs of the project, its annual expense, the depreciation thereon, and the amount of water used by various persons. As we understand him, his proposed formula for determining a just and reasonable annual charge per acre foot of surplus water is:

(Cost × Reasonable Return) + Depreciation + Maintenance Acre Feet Sold (both permanent and average annual) = Charge Per Acre Foot.

Although surplus water and public utilities may not be parallel in all of the factors worthy of attention, this equation calls to mind the statement of this court in the case of Application of Northern Utilities Co. (Nat-

ural Gas Consumers of Rock Springs v. Northern Utilities Co. of Casper), 70 Wyo. 225, 258, 247 P. 2d 767, 78 4:" * * * the * * * Utilities Company is entitled to have a rate increase that is 'just and reasonable' and which will be productive of a proper return on the investment."

Whether or not defendant's formula and philosophy should have been adopted by the Board of Special Commissioners as all or part of the criteria for determining the price of the surplus water need not be decided at this time. It was the board's province to determine the rate, after a consideration of all theories advanced by the interested parties. The board, subject to the restrictions applicable to all administrative agencies, had reasonable latitude and discretion in determining the rates, as well as the elements and factors upon which the rates would depend. The functions of the Board of Special Commissioners as to the rates to be charged for the use of surplus water and the functions of the Public Service Commission of Wyoming as to the rates of various public utilities are not dissimilar on that subject. Judge Riner in the case of Application of Northern Utilities Co. (Natural Gas Consumers of Rock Springs v. Northern Utilities Co. of Casper), 70 Wyo. 225, 255, 247 P. 2d 767, 783, said: "It must be remembered that neither the district court nor this court is authorized to try the case anew and as said by 73 C.J.S., Public Utilities, § 64, subdivision (j) (2), page 1161:

" 'The reviewing court will not substitute its discretion for that of the commission * * * .' "

However, in reaching its determination, a public administrative agency, such as the Board of Special Commissioners, must consider all relevant evidence and argument.

"One of the most important safeguards of the rights of litigants, and the minimal constitutional requirement, in proceedings before an administrative agency

vested with discretion, is that it cannot rightly exclude from consideration facts and circumstances relevant to its inquiry which upon due consideration may be of persuasive weight in the exercise of its discretion. Pittsburgh Plate Glass Co. v. National Labor Relations Bd. 313 US 146, 85 L ed 1251, 61 S Ct 908   *   *   *   ." 42 Am. Jur., Public Administrative Law, § 148, no. 6.

We think we should also say at this point that irrigation water and more especially surplus water cannot be treated as the absolute property of any individual. The basic concept of all Wyoming thinking about irrigation water emanates from Article 8, § 1 of the Wyoming Constitution, which states:

"The water of all natural streams, springs, lakes or other collections of still water, within the boundaries of the state, are hereby declared to be the property of the state."

It has been said at various times by our courts that State ownership of the water is subject to a trust, the right of appropriation by anyone for beneficial use. See Willey v. Decker, 11 Wyo. 496, 73 P. 210.

A clear statement of the converse of this view was made in Scherck v. Nichols, 55 Wyo. 4, 18, 95 P. 2d 74, 78, where Judge Blume, discussing an application for future use, said:

" ' * * * an application may properly be made when it is made in good faith and with an actual bona fide intention and a present design to appropriate the water for a beneficial use, though contemplated in the future, and when it is not made for the purposes of mere speculation or monopoly."

In dealing with water, we cannot ignore the public interest and the relative rights to beneficial use in a regulated manner without encouraging monopoly and speculation. Therefore, any evidence or argument which bears on this phase of the situation is relevant in a surplus water rate hearing before the Board of Special Commissioners. It tends to effectuate the con-

trol and supervision which we think the legislature meant to keep over surplus water.

Analysis of our statutes, especially §§ 71-602, 71-616, and 71-701, W.C.S., 1945, shows that the basic right to store reservoir water for irrigation purposes depends upon provisions for use of the water by the holders of primary permits, by the holders of secondary permits, and by the owners of other lands lying under and capable of being irrigated from the reservoir, in the order named. Our constitution, statutes, and decisions, fairly interpreted, mean that any rights to use such water in this State are based upon priority and beneficial use and are relevant to the rights of all interested parties.

We come now to a consideration of numbers (2) and (3) of defendant's claimed errors, i.e., the refusal of the court to permit inspection of plaintiff's books and records, and the claimed insufficiency of evidence to support the judgment. Much of what has been said about the fairness of the hearing and the reasonableness of the resultant rate in the light of the special status of surplus water is applicable to both of these points. As we have indicated, both parties were entitled to freely present their theories as to the bases for the establishment of the rates. The lack of notice and the brevity of the hearing would seem to have deprived defendant of presenting his view of the case to the board, and the district court's finding "that the books and documents, for which demand has been made under the statute, do not appear to be such as contain evidence relating to the defense of the action," prevented a comprehensive review of the board's action by the court, and left defendant without ever having had an opportunity to be heard on what he deemed to be the crux of the case. The statutes relating to production and inspection of books, papers, and documents, §§ 3-3117, 3-3118, W.C.S., 1945, are clear and unambigu-

ous. It is true that they are permissive and that the trial court may exercise discretion in permitting any production or inspection. However, the court should not deny a request therefor if the information sought relates directly to the merits of the action or defense; and any such denial is an abuse of discretion.

In the light of our views as above expressed, analysis of the remaining contentions of defendant is unnecessary to a determination of this case. However, in order to fully clarify the situation, it may be well to discuss them briefly. Defendant has said that "plaintiff corporation does not have a right to divert, store, and impound 25,000 acre feet of water in Lake DeSmet without regard to the amount of water beneficially used or for which there are dependent secondary permits." This statement is somewhat ambiguous to us. If he means that any water stored by a reservoir owner, over and above that covered by permits, is subject to control by the State in accordance with statute, we agree. On the other hand, if he means literally, as he says in one place, that plaintiff corporation "had no right to store more water than it could use beneficially," he finds himself confronted by two insurmountable legal difficulties:

(a) " * * * want of title in the seller is not available as a defense to an action for the price if the buyer has retained possession; and a fortiori, where the buyer purchases with knowledge of the seller's want of title to the subject matter, he cannot set up such want of title as a bar to an action for the price." 46 Am. Jur., Sales, § 596.

(b) Section 71-616, W.C.S., 1945, effective in 1931, at the time of plaintiff's permit, specifically provides for the impounding and sales, under supervision, of surplus water. Certainly, this section must be considered in pari materia with §

71-602, W.C.S., 1945, and its predecessors, on which defendant relies.

Defendant said "the plaintiff, if it had a right to annually divert and store 25,000 acre feet of water, has abandoned the right"; but he presented no proof at the trial showing that the plaintiff corporation had abandoned its right to store water under its permit. See also Sturgeon v. Brooks, 73 Wyo. 436, 457, 458, 281 P. 2d 675, 683, which discusses forfeitures and abandonment of water rights. We think this contention of defendant is untenable.

We agree with defendant that under § 71-701, W.C. S., 1945, the legislature has designated reservoirs under certain circumstances as common carriers. However, the specific provision of § 71-616, W.C.S., 1945,

"The State Engineer, the Water Commissioner of [the] particular district and the Water Superintendent having jurisdiction over the region of any reservoir shall together constitute a Board of Special Commissioners, and shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water from any reservoir, whether furnished by individuals or a corporation,"

is the governing provision in that regard and takes precedence over any general statute relating to common carriers, public utilities, and rates in general.

To recapitulate, the purported establishment by the Board of Special Commissioners of reasonable maximum rates for the surplus water from the Lake De-Smet Reservoir Company for the years 1953 and 1954 was not legal, valid, and binding upon the defendant herein for the reasons above stated. We deem it proper that this case be remanded to the district court in order that the Board of Special Commissioners may in the manner herein indicated be given the oppor-

tunity to establish reasonable maximum rates for the surplus water in issue.

*It is so ordered.*

BLUME, C. J., and HARNSBERGER, J., concur.