MARATHON OIL COMPANY, a Corporation, Wyoming Oil and Gas Conservation Commission, and James L. Carlton, Jr., as State Oil and Gas Supervisor, Appellants (Defendants below),

v.

PAN AMERICAN PETROLEUM CORPORATION, a Corporation, Appellee (Plaintiff below).

No. 3816.

Supreme Court of Wyoming.

Aug. 7, 1970.

Morris G. Gray, Robert H. Anderson, and W. Hume Everett, of Everett & Everett, Casper, for appellant Marathon Oil Co.

James E. Barrett, Atty. Gen., Cheyenne, for appellants Wyoming Oil and Gas Conservation Commission and State Oil and Gas Supervisor.

A. G. McClintock, of McClintock, Mai & Urbigkit, Cheyenne, and Oscar E. Swan, Jr., Denver, Colo., for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This is the second appeal in this case. After the Wyoming Oil and Gas Conservation Commission denied an application of Pan American Petroleum Corporation for a permit to drill an oil well in the Grass Creek Field, Pan American sought relief by appeal to the district court of Laramie County and from there to this

court. We reversed because the Commission had failed to make adequate findings of fact as required by the Wyoming Administrative Procedure Act. Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission, Wyo., 446 P.2d 550.

Upon rehearing the Commission reaffirmed its denial of the application to drill and made additional findings of fact. The district court, upon Pan American's second appeal in that court, vacated the Commission's action and directed the issuance of a permit to drill. Marathon Oil Company, the Wyoming Oil and Gas Conservation Commission and the State Oil and Gas Supervisor, James L. Carlton, Jr., have now appealed to our court.

Section 30–219, W.S.1957, C. 1967, authorizes the Commission to make rules and regulations and take appropriate action to effectuate the purposes of the oil and gas conservation act. Pursuant to such authority the Commission has adopted Rule 302 requiring all oil and gas wells to be located in the center of a governmental 40-acre parcel. Rule 303 authorizes applications for an exception to the restriction of Rule 302.

Pan American applied for an exception, since its well was not to be located in the center of a 40-acre parcel. The Commission denied the exception and held Rule 302 controlling. In reversing the Commission, on the second appeal, the district court held Rule 302 invalid as applied to the Grass Creek Field.

We find the action of the Commission in attempting to prevent the drilling of Pan American's proposed well arbitrary, under the circumstances of this case, and without lawful authority.

### About the Grass Creek Field

The Grass Creek Field was discovered in 1914. The principal producing formations are the Embar and Tensleep formations, and they have been productive since 1923. Most of the development occurred during the 1940's and early 1950's.

Pan American owns a lease on an 80-acre tract known as the Meeteetse 15 lease, described as the W½ SW¼ of Section 18, Township 46 N., R. 98 W., in the northwest portion of the field. Adjoining it on the north is Marathon's Ehrlich lease, covering the NW¼ of Section 18, and on the east is Marathon's Wiley lease covering the E½ SW¼ of Section 18. Through the years four wells were drilled on Pan American's Meeteetse 15 lease and three were drilled on Marathon's Wiley lease. Two wells on Pan American's lease are no longer productive.

At the end of this opinion is a plat, marked Appendix "A". It shows the leases of Pan American and Marathon, the wells thereon, and the location of the proposed well. Another plat, marked Exhibit 13, shows contour lines, according to Pan American's geology, for the Tensleep formation. Contour lines for the Embar formation are shown on Exhibit 14.

It is undisputed that water is encroaching in the productive formations and eliminating production at the lower formation elevations. If the contour maps presented in evidence are assumed to be correct, and if it is assumed water will first replace oil at the lower levels, it becomes apparent that Pan American will not recover its full share of oil without an additional well.

If an additional well is drilled, the Commission would have authority under ch. 139, § 1, S.L. of Wyoming 1969, to limit the production from such well, if necessary, in order to protect correlative rights of Marathon. In doing so, however, it would of course give consideration to production already lost by Pan American since the date of its application for a permit to drill.

Marathon has offered expert testimony for its theory that a fault and the direction from which the water comes alter the productive zones. It is hard for us to accept this testimony as sufficient to overcome the physical fact of gravity, and in that connection we call attention to our

holdings in Terry v. Moore, Wyo., 448 P. 2d 601, 605, and Oeland v. Neuman Transit Company, Wyo., 365 P.2d 806, 810.

However, without attempting at this point to weigh the effect of such testimony, let us first look at the Commission's statutory authority and its Rule 302, as applied to a field already developed and existing prior to the Commission's statutory authority and prior to its adoption of Rule 302.

The oil and gas conservation act was adopted in 1951 and Rule 302 was promulgated after that. All this was many years after the Grass Creek Field was developed.

### Pertinent Provisions

Section 30–227, W.S.1957, C. 1967, states that when a proper application for a permit to drill has been made, with payment of the required fee, the Commission shall promptly issue the permit, "unless the drilling of the well is contrary to law, or to a rule, regulation, or order of the commission."

There admittedly is no law, rule, regulation, or order preventing issuance of the permit here involved, unless it be the Commission's Rule 302. This rule, in pertinent part, reads:

"In the absence of special orders of the Commission establishing drilling units or authorizing different well density or location patterns for particular pools or parts thereof, each oil and gas well shall be located in the center of a forty (40) acre governmental quarter quarter section * * *, with a tolerance of 200 feet in any direction from the center location; provided, that no oil or gas well shall be drilled less than 920 feet from any other well drilling to or capable of producing oil or gas from the same pool * * *."

By its own language, Rule 302 applies only in the absence of special orders of the Commission authorizing different well density or location patterns from that contemplated in the rule. As far as the Grass Creek Field is concerned, a different well density pattern and a different location pattern were already in existence when the Commission was created, but there is no special order of the Commission pertaining thereto.

In our former decision, at 446 P.2d 554, we said Rule 303 is in effect an "escape hatch" to claimed infringement of property rights by Rule 302. It can serve as an escape hatch, however, only if properly administered, and that means the Commission cannot be arbitrary about allowing or refusing exceptions under Rule 303.

Administrative officers and boards will not be permitted to act in an arbitrary, capricious or fraudulent manner; and courts will restrain administrative agencies from becoming despotic. Wyoming Department of Revenue v. Wilson, Wyo., 400 P.2d 144, 145, reh. den. 401 P. 2d 960.

In 2 Am.Jur.2d Administrative Law § 229, p. 126, recognition is given to the proposition that an administrative agency may not lay down a general regulation which predetermines cases within the regulation in disregard of particular circumstances. Also, courts have sometimes said "arbitrary and capricious action" on the part of an administrative agency is wilful and unreasoning action, without consideration and in disregard of facts and circumstances. Bishop v. Town of Houghton, 69 Wash.2d 786, 420 P.2d 368, 373. See also Olson v. Rothwell, 28 Wis.2d 233, 137 N.W.2d 86, 89.

The Commission's Rule 302 utterly and completely disregards the circumstances present in a field which was developed prior to the adoption of such rule, where wells were not drilled at the center of 40-acre subdivisions of land. If it were not for Rule 303, it would be unreasonable and arbitrary for the Commission to apply Rule 302 in the Grass Creek Field.

As we have indicated, it is made clear in Rule 302 that it is not to be operative when "special orders" of the Commission authorize something different. Apparent-

ly the Commission intends that its "special orders" will be forthcoming in connection with applications for exceptions under Rule 303. It follows, however, that the Commission must be reasonable and not arbitrary in its consideration of applications for exceptions in fields like the Grass Creek Field. Otherwise, the "escape hatch" we have spoken of would not be present.

The position taken by Marathon has been that Pan American failed in its burden of proof and failed to submit substantial evidence relating to the exception requested. We stated in our former decision, at 446 P.2d 555, that neither counsel for Marathon nor the Commission had appropriately shown us wherein Pan American failed in its proof.

We specifically asked for and gave the Commission an opportunity on the second go-round to furnish "technical guidance" as to the reasons why Pan American's expert testimony had been rejected. The testimony we referred to was based almost entirely on the actual performance of the field over the past 20 years. It projected that performance into the future.

We said in our former decision, also at 446 P.2d 555, with respect to findings on the pivotal factual issues presented concerning the necessity for an exception well for protection of Pan American's correlative rights, that such findings were nothing more than ultimate findings of fact or conclusions of law; and that such findings were not basic findings of fact.

The additional findings of fact made by the Commission following its last hearing still are not helpful in the critical areas. For example, we still are furnished no "technical guidance" or given any factual reasons for rejecting Pan American's expert testimony based on actual performance of the field. The Commission claims there was a conflict in the evidence; and with respect to the weight of evidence, it concluded Pan American failed to establish by a preponderance of the evidence that uncompensated drainage was occurring.

We fail to find from any of the Commission's findings why it was not occurring.

After a specific finding that the evidence of Pan American was sufficient to make a prima facie case and to entitle it to the requested exception, if the evidence stood alone, the Commission followed by finding that the weight of the countervailing evidence of Marathon was at least equal to the evidence of Pan American. All we get from this is that the Commission considered the evidence of Marathon sufficient to offset the evidence of Pan American, but the finding fails to set forth facts found by the Commission to support its conclusion that Pan American's prima facie case was overcome.

It is true the Commission did mention by way of general comment that Pan American's witnesses admittedly did not take into account the existence or effect of the fault, "a factor which the Commission deems to be of significance." The mere existence of a fault is not sufficient to prevent water from seeking the lower levels and from eliminating oil production at lower levels first.

It would take some additional facts, aside from the fault, to make a situation which would produce the kind of phenomenon relied on by the Commission. If there are facts to overcome the inferences to be drawn from contour maps, and to overcome the inference that water will first replace oil at the lower levels, the Commission has not made a finding of such facts.

We pointed out in our former decision, at 446 P.2d 555, that it is not incumbent upon us to search the record to supply omissions in the findings of fact. We cannot, without indulging in speculation and guesswork, assume special facts are present in the Grass Creek Field to prevent water from first replacing oil at the lower levels. And if we assume, as we are left to do, that water will first replace oil at the lower levels, then we

must conclude that uncompensated drainage of Pan American's oil is and has been for some time occurring.

Our conclusion is that the Commission has not made findings of fact based upon substantial evidence sufficient to justify its denial of Pan American's application for an exception. Its action was therefore arbitrary and accordingly we cannot say the trial court's direction for issuance of a permit to drill was erroneous under the circumstances.

Judgment of the district court affirmed.

PLAT SHOWING
PHYSICAL POSITION OF WELLS & LEASES
GRASS CREEK FIELD
HOT SPRINGS COUNTY, WYOMING
EMBAR TENSLEEP RESERVOIR
SCALE: 1"=1000'
PERTINENT LANDS

MARATHON OIL COMPANY
PAN AMERICAN PETROLEUM

APPENDIX "A"

Proposed Location

GRASS CREEK FIELD
HOT SPRINGS CO., WYOMING
SCALE: 1" = 1000'
TENSLEEP
ISO-WATER CUT CONTOURS

ORIGINAL OIL-WATER CONTACT

EXHIBIT 13

Proposed Location

GRASS CREEK FIELD
HOT SPRINGS CO., WYOMING
SCALE: 1" = 1000'
EMBAR
ISO-WATER CUT CONTOURS

ORIGINAL OIL-WATER CONTACT

EXHIBIT 14