**WYOMING BANCORPORATION, Appellant**
**(Plaintiff below),**

v.

**Dwight BONHAM et al., Appellees**
**(Defendants below).**

**No.** 4363.

Supreme Court of Wyoming.

Oct. 16, 1974.

Rehearing Denied Oct. 29, 1974.

Jack B. Speight and John G. Hanes, of Hanes, Carmichael, Johnson, Gage & Speight, P. C., Cheyenne, for appellant.

Juan L. DeHerrera, Cheyenne, for appellee Dwight Bonham.

Henry A. Burgess, of Burgess & Davis, Sheridan, Richard L. Eason, of Simon, Eason, Hoyt & Malone, P. C. Englewood, Colo., for Wyoming Security Bank.

Before GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Wyoming Bancorporation[1] appeals the decision of the District Court of Laramie County, Wyoming, affirming the order of the Wyoming State Examiner authorizing the issuance of a State bank charter to

---

1. Wyoming Bancorporation, hereinafter referred to as Bancorporation, is a bank holding company organized under Federal law, and itself controls a number of banks within the State of Wyoming, some federally chartered and some under charters from the State. As hereinafter more particularly detailed, it was the successful recipient of a national charter for Bank of Wyoming, N.A., the doors of which were opened for business on the day this appeal was argued before us.

Wyoming Security Bank of Sheridan, Wyoming.[2]

Section 13–44, W.S.1957, 1973 Cum. Supp.,[3] provides for the incorporation of State banks under the sole jurisdiction of the examiner. Incorporators are required to file with him articles of incorporation, setting forth information concerning the proposed bank, specifically including the capital stock and number of shares into which it is to be divided. Of particular pertinence to this action are the directions that the examiner shall inquire into the "convenience and needs of the community to be served by the proposed corporation" and that he "shall be the sole judge as to whether or not a charter shall be granted." Section 13–45, W.S.1957, 1973 Cum.Supp., directs that the certificate of articles of incorporation so filed shall be accompanied by a fee of $500 "to cover the expense of the investigation to be made by the state examiner."

Under date of April 27, 1972, a letter transmitting the required number of articles of incorporation was signed by George Acker, one of a group of five incorporators seeking the issuance of the charter, and this letter, the copies of the articles, and a check for $500 were on the next day personally delivered to the examiner at his office in Cheyenne. At this time the examiner delivered to one of the representatives of the group an instruction sheet theretofore prepared by the examiner designating what further information should be furnished to the examiner, but orally informed them that the letter and other papers had been accepted as an application for charter. A letter of the examiner dated May 23, 1972, confirmed acceptance of the letter, articles, and check representing filing fee to accompany the Application for Charter and that requirements for "Completion of Application for Charter" had been delivered to applicants at the time the hand-carried letter had been received, and advised that the further information should be received by the examiner within 90 days.

"Application to Organize a State Bank and Representations of Applicants," in the form required by the instructions delivered to the applicant on April 28, was mailed to the examiner on July 26 and received by him on July 31, 1972. An independent investigation was conducted by the chief investigator for the examiner, and on September 22, 1972, he filed his report recommending that the charter issue.

On June 14, 1972, Bancorporation mailed to the Regional Administrator of National Banks an application for a bank to be located at Sheridan and to be known as Bank of Wyoming, N. A. This application was acknowledged by the administrator to have been perfected on July 18, 1972, and in the letter advising of such acceptance it is stated that field work to investigate the merits of the application would be undertaken forthwith. Following indication of this acceptance, and on August 31, Bancorporation filed its objection to the Security

---

2. Hereinafter referred to as Security; Dwight Bonham, Wyoming State Examiner, vested by State law with the power to issue State bank charters, will be referred to as the examiner.

3. In pertinent part, paragraph (c) of this section, as amended by S.L. of Wyoming 1973, ch. 119, provides: "It shall be the duty of the state examiner to inquire into the adequacy of the capital structure proposed by the incorporators, the future earning prospects of the proposed corporation, the general character and ability of the incorporators, and the convenience and needs of the community to be served by the proposed corporation, and whether or not its proposed corporate powers are consistent with the purpose and requirements of the banking laws of this state. The state examiner shall be the sole judge as to whether or not a charter shall be granted, and he shall have authority either to approve or reject any certificate of incorporation. Before any application is approved or rejected the state examiner shall upon the request of five persons or upon examiner's own motion conduct a public hearing in accordance with the Wyoming Administrative Procedure Act [§§ 9–276.19 to 9–276.33]. * * * When the charter is either approved or rejected the state examiner shall issue findings of fact and conclusions of law regarding the requirements set forth herein. * * *" The last two sentences above were added by the 1973 amendment.

application, claiming that the Security application was filed by a group who through the existing Bank of Commerce controlled some 64 percent of the deposits in Sheridan [4] and that it would be in the better interests of the public to deny the State application and permit the national application to be granted. This protest was formally withdrawn by letter dated and filed with the examiner on September 25, 1972, but on February 26, 1973, Bancorporation wrote and filed with the examiner a letter asking for a hearing "as authorized in the bank hearing bill (S.L. of Wyoming 1973, ch. 119, app. February 23, 1973)." [5]

In keeping with rules of the examiner entitled "Application Proceedings for State Bank Charters," adopted effective May 25, 1973, a hearing was held by the examiner on June 20, preceded by a prehearing conference on June 11. At both the conference and hearing Bancorporation took the position that another bank was needed in Sheridan but that because of ownership of Security by persons already interested in the Bank of Commerce, a dominant bank in the Sheridan community, the needs of the community for competition would not be satisfied except through issuance to Bancorporation of the Federal charter then being sought by it. Mr. Howes, President of Bancorporation, testified that it protested Security's application on the basis that its Federal application was prior in time and that it would be the only bank furnishing competition to the existing banks. Notwithstanding his expressed confidence that the Federal charter would issue, neither he, as the sole witness for Bancorporation, nor any of the witnesses for Security made any attempt to assess the impact upon the Sheridan community of the issuance of both a State and a Federal charter. The feasibility report prepared by the examiner's chief assistant as well as the examiner's oral remarks prior to closing the hearing likewise do not consider this point.

Prior to closing the hearing the examiner requested each side to submit a summation of the evidentiary material and to submit proposed findings of fact and conclusions of law, along with memoranda as to their respective legal positions. Following the hearing and on July 5, 1973, Bancorporation was advised by the comptroller that preliminary approval had been granted to organize the Bank of Wyoming, National Association, which information was telephoned to the examiner and incorporated in an affidavit filed with Bancorporation's memorandum brief. In this memorandum it is claimed that the situation has materially changed and that action of the examiner granting a charter to Security would be subject to court challenge as being arbitrary for want of sufficient information upon which to make a proper decision. It was argued that the examiner did not have sufficient information to justify the issuance of a fourth bank charter, the entire record being predicated upon the issuance of a charter for a third bank. No request was made for permission to submit further evidence concerning the national charter.

On July 31, 1973, the examiner entered his Findings, Conclusions and Order Granting Charter. Three of the findings may be said to relate to the question of

---

4. It is not denied that Security and the Bank of Commerce would constitute affiliated banks. Much of Bancorporation's claims concerning lack of effective competition is predicated on this fact.

5. The First National Bank of Sheridan, which the evidence shows had some 36 percent of the deposits of the two Sheridan banks, first objected to the issuance of a State charter to Security (as well as another application then pending for a State bank at Story, Wyoming) by letter dated September 19, 1972, supported by some documents that do not appear in the present record. This objection was renewed by letter filed with the examiner May 31, 1973. Both of these letters indicate the objection of this bank that the issuance of a new charter in either Sheridan or Story is not justified by the economy and might endanger the financial well-being of the banking community. First National was not represented at the examiner's hearing and has taken no part in the review proceedings.

convenience and need, the first of these being that there "is an existing need for better service to the business community growing southward along South Coffeen Avenue, and the proposed bank would fulfill such need"; the second finds that the bank would have a competitive advantage because of its location in that it would "be more conveniently accessible to businesses and residents located within the primary service area, which is a rapidly developing commercial and residential area of the community"; and the third is that accelerated growth of Sheridan banks in recent years "indicates a rapidly expanding market in the community and demonstrates the need for additional banking facilities." The examiner concludes in part that the proposed bank "will serve the convenience and needs of the community of south Sheridan, Wyoming, Big Horn and Story and surrounding unincorporated area." The order makes no reference to the preliminary approval of the national charter for Bancorporation, nor are there any findings or conclusions with respect to what effect the authorization of two new banks would have upon the banking community of the City or County of Sheridan.

In its petition for review Bancorporation specifically complains of this failure to find that the city or county can economically support a fourth bank despite the fact that Bancorporation has brought home to the examiner the approval of the national institution.

The matter was orally argued to the district court and memoranda were again submitted, with Bancorporation including in its submission the memorandum which had been submitted to the examiner, thereby again emphasizing its claim that a fourth bank charter was being considered by the examiner. Security and the examiner both argued that the question had to be considered on the then status and that the national charter had not yet been finally approved. The examiner also argued that the question of whether 'a fourth bank charter should issue should be considered by the Federal banking authorities and was not a question for the State court.

A written opinion delivered by the district court expressed the view that the examiner was not required to take cognizance of possibilities that might or might not happen and was entitled to make his decision on the basis of the record as it stood at the time of the presentation to him. It is said that the findings of the examiner embrace the element of competition, location of the bank, growth of the community, and the general character, experience and ability of the incorporation which will tend to sound management and command public confidence. The judgment thereafter entered finds among other things that the examiner inquired into "the convenience and needs of the community to be served by the proposed corporation"; that the examiner was the sole judge as to whether a bank charter should be issued; that his action was supported by substantial competent legal evidence; and that the decision was not arbitrary, capricious, nor an abuse of the examiner's discretion and was in conformity with the law.

We agree with certain basic principles cited by Security, namely, that the examiner's decision comes to the district court and to us with a presumption of legality and validity, that we may not substitute our judgment for that of the examiner, that the legislature has entrusted to him the determination of approval of bank charters, and that the weight and sufficiency of any evidence in support of the application is for him to decide. All this is underscored by the legislative direction that the examiner shall be the sole judge as to whether or not the charter shall issue. This court has said in Marathon Oil Company v. Welch, Wyo., 379 P.2d 832, 836, citing a number of earlier decisions, that the courts may set aside action of an administrative agency only where its action is "arbitrary or fraudulent or where there is an illegal exercise of discretion; and the

burden of proving arbitrary, illegal or fraudulent action is on the complainant."

Appellant herein asserts three bases for reversal of this order which it states as follows:

"I. THE STATE EXAMINER ACTED ARBITRARILY AND CAPRICIOUSLY WHEN HE ACCEPTED THE APRIL 27, 1973, LETTER FROM THE APPELLEE AS A PERFECTED APPLICATION FOR A STATE BANK CHARTER.

"II. THE EXAMINER ERRONEOUSLY FAILED TO CONSIDER COMPETITION OR LACK OF COMPETITION IN DETERMINING WHETHER OR NOT TO ISSUE THE WYO. SEC. BANK CHARTER.

"III. THE EXAMINER'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE NOT SUPPORTED BY THE EVIDENCE."

■ Appellant seeks to buttress its claim in support of the first-mentioned contention by a showing that the state examiner had made additional requirements for filing of groups seeking State charters in Story, Hanna, and Casper. In our view, this raises a substantial question of standing but we do not decide the question whether appellant might raise these questions which would seem applicable and peculiar only to these applicants about which complaint is made. The fact that we are confronted with a dual system and that each can issue a charter might also raise some interesting questions as to the effect of priority and standing of the parties to raise the same. However, our disposition will not rest thereon. At the time of this filing, April 28, 1972, there were no administrative rules issued by the examiner and the statute was the sole basis of his actions, §§ 13-44 and 13-45, W.S.1957, 1973 Cum.Supp., and appellant makes no contention in its brief that Security had not filed the papers therein required, although it styles it a letter. Additionally, the trial court in its letter opinion held that the application was filed on April 28 and that the only then "controlling directives" were contained in §§ 13-44 and 13-45. There is no authority or cogent argument submitted in the brief which would justify any different conclusion or a reversal of this finding.

■ Appellant's principal contention and upon which it must rise or fall is that the examiner failed to consider the effect of the competition between the Wyoming Security Bank and the appellant, Bank of Sheridan, N.A. This could not have been properly considered by the state examiner, the trial court, or this court, because at the time of the hearing on the issuance of the charter for Security on June 20, 1973, there had been no action at all upon the application of the appellant and nothing could have appeared in the record of that hearing. On July 31, 1973, the date upon which the order was made authorizing the issuance of the charter, there was still no evidence in the record that the appellant bank had been chartered and definite evidence that it did not have any authority to operate at that time, nor was there anything in the record from which the examiner could have made a proper determination that appellant's application had been unconditionally approved by the comptroller.

The structure of appellant's entire argument must rest solely upon a telephone conversation of July 5,[6] and the copy of the telegram attached to the affidavit of Howes dated July 16. The body of this telegram dated July 3 is as follows:

"PRELIMINARY APPROVAL GRANTED APPLICATION TO ORGANIZE NATIONAL BANK AT

---

6. The propriety of ex parte telephone communications with an officer or body disposing of an administrative matter after the close of the hearing but prior to decision is questionable and to have acted thereon would have given legitimate grounds of complaint to appellee. Howes recognizes this impossibility of direct communication with the comptroller after having completed a hearing in a national bank application in his testimony.

SHERIDAN, WYOMING UNDER TITLE 'BANK OF WYOMING, NATIONAL ASSOCIATION'. LETTER FOLLOWS."

The affidavit sets out its receipt by Howes on July 5 and that he had advised the state examiner by telephone. Appellant did not at that time or any time ask to reopen the hearing or make any further showing nor was any mention ever made thereafter of the letter to which reference is made and which may have defined or conditioned "preliminary approval."

██ The examiner had before him the testimony of Howes at the hearing that an application for a bank to be chartered by the comptroller required approval by the Federal Reserve System.[7] The examiner may also have recognized and known this because of his expertise in this field. In absence of trying to get this preliminary approval and its effect into the record, appellant insists that the examiner could or should take judicial notice of this telegram. The area of judicial notice available in administrative proceedings has been well and closely defined by § 9–276.26(d), W.S.1957, 1973 Cum.Supp., and there is no justification for such judicial notice resting therein obvious to us nor does appellant point out its admissibility under this section, but relies solely on argument by example which we find inapplicable.

█ We are further aware of the statement in Torgeson v. Connelly, Wyo., 348 P.2d 63, 66, as follows:

"* * * In Wyoming our statute does not permit courts to take judicial notice of the occurrences in Federal bureaus, * * *"

so neither the trial court nor this court is free so to do. This telegram and the information therein not being properly in the record and not being adduced before the state examiner nor being a matter of

which he could take official notice, he could base no finding of fact thereon, § 9–276.25(p), W.S.1957, 1973 Cum.Supp. Neither the trial court nor this court can then properly consider it if it not be in the record, Chicago, Burlington & Quincy Railroad Company v. Bruch, Wyo., 400 P.2d 494, 497.

Appellant has no ground for complaint. First, it made its reliance upon the telegram and affidavit without any request to reopen and make a proper showing in this proceeding. Second, it did not avail itself of the opportunity to even advise the examiner that it wished to pose this definite question when it failed to submit suggested findings of fact and conclusions of law during the 30-day period which it asked for this purpose. There must have been some purpose in the minds of the legislators when they included as a part of the record "any proposed findings," § 9–276.25(m), W.S.1957, 1973 Cum.Supp. It is suggested in 1 Cooper, State Administrative Law, pp. 425–426 (1965), that it is by this vehicle that appellant can frame issues clearly, specifically, and precisely, and thereafter cast upon the administrative body the burden of the specific issue they deem decisive.

█ Appellant in its memorandum filed with the state examiner raised the question of the competition between the so-called third and fourth banks, stating:

"What, of course, has happened is that since the hearing the basic facts have been changed because the Comptroller of Currency has issued a National Bank Charter to the Protestants. * * *"

again relying on the equivocal telegram, and concludes that because the record was based upon issuance of a charter for the third bank the proceedings are now moot. We might give great weight to this assertion if it is conceded a charter was issued prior to the decision. However, the state

---

7. Although it is de hors the record and cannot be considered by this court in its disposal, Appendix A attached to the brief of appellee state examiner is a copy of an order showing that the Board of Governors of the Federal Reserve approved this charter effective May 3, 1973.

examiner is bound to the record, § 9–276.-25(p), W.S.1957, 1973 Cum.Supp. This argument demonstrably has its basis in a claim of priority which was not in our view sustained by the record. As mentioned in Marathon Oil Co. v. Welch, Wyo., 379 P.2d 832, 836, "the burden of proving arbitrary, illegal or fraudulent action is on the complainant." This burden includes not only clear presentation of this question but placing evidence in the record to sustain appellant's position. Further appellant made no application to the trial court presenting any evidence thereon, Rule 72.1(h), W.R.C.P.

■ Unless adverse parties appearing before administrators or administrative bodies are required to frame issues and contentions for decision by the hearing body, such hearings will become meaningless charades necessitating upon appeal what would be factually a trial de novo contrary to the purpose and philosophy of the Administrative Procedure Act. For a reviewing court to reach an asserted proposition of an appellant the issue must have been raised for decision before the administrative body or administrator responsible for the decision. This is admirably expressed by the United States Supreme Court in the case of United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 68–69, 97 L.Ed. 54, where it is said:

"We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the court. * * *"

See additionally, Moog Industries v. Federal Trade Commission, 355 U.S. 411, 78 S. Ct. 377, 380, 2 L.Ed.2d 370, rehearing denied 356 U.S. 905, 78 S.Ct. 559, 2 L.Ed.2d 583, and United States v. Elof Hansson, Inc., 48 C.C.P.A. 91, 296 F.2d 779, 781, certiorari denied 368 U.S. 899, 82 S.Ct. 179, 7 L.Ed.2d 95, following Tucker Truck Lines, and with a further discussion. Further, objections must have had particularity as to properly identify the question and to give notice of the contention, National Labor Relations Board v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 290–291, 97 L.Ed. 377. Thus, in our view the competition as between these two banks was never properly posed to the examiner and we cannot now consider or order him to consider it. There must be some finality even in administrative proceedings, as in judicial proceedings, Martellaro v. Sailors, Wyo., 515 P.2d 974, 976.

Appellant's last contention that the findings of fact and conclusions of law are not supported by the evidence has been covered in some particulars in the factual statement and preceding remarks. However, it bases this assignment on the following, which it styled "Pertinent Facts":

"(1) There are presently two existing banks in Sheridan, Wyoming;

"(2) Wyo. Bancorp. has filed an application for a national bank charter in Sheridan, Wyoming, which was perfected July 18, 1972

"(3) Wyo. Sec. Bank has filed an application for a state bank charter in Sheridan, Wyoming, which was perfected July 31, 1972

"(4) The Wyo. Bancorp. national bank charter was issued by the Comptroller of the Currency on July 3, 1973 [8]

"(5) Wyo. Sec. Bank state bank charter was issued by the Examiner on July 31, 1973."

It is apparent that these contentions, although interrelated, do not become operative unless we recognize the asserted claims of priority, first as to filing, and second as to the issuance of a charter. From what has been heretofore said, this position is not viable and we see no reason for further discussion of this matter.

---

8. This proposition is insupportable from what has been said earlier in this opinion.

The situation here demonstrates that there may be inherent dangers in our dual system of chartering banks and this clearly demonstrates the obligation of the respective legislative bodies of those chartering authorities to in some manner coordinate or make issuance of these charters dependent upon mutual action or consultation for the public good. However, it is not the province of this court to attempt to effect such cure and it is inconceivable to us that a preliminary or tentative approval by the comptroller should tie the hands of the state banking officials upon an earlier application. If either licensing or chartering authority was bound to investigate and determine the question of the effect of competition between the Security State Bank and appellant, that burden rested upon the comptroller, who had notice of the filing of a state application ahead of appellant, and he should have carefully considered the rules and the cases cited by appellant to us, particularly Bank of New Bern v. Wachovia Bank & Trust Company, N.A., D.C.No.Car., 353 F.Supp. 643, 647, and Howard Savings Institution of Newark v. Howell, 32 N.J. 29, 159 A.2d 113, and the case of Bank of Haw River v. Saxon, D.C.No.Car., 257 F.Supp. 74, 79.

The judgment of the trial court is affirmed.

McCLINTOCK, Justice (dissenting).

As I understand the majority opinion, it holds that while the question of overbanking a community may be of importance, it was not an issue in the administrative hearing held by the Examiner at the request of Bancorporation, no evidence was presented on the issue at the hearing, and evidence relating to the approval of a national charter for Bancorporation's Bank of Wyoming, N.A., was not properly before the Examiner and did not have to be considered by him. Moreover, such evidence as was improperly presented showed only the possibility of such issuance of a national charter and the Examiner did not have to concern himself with mere possibilities.

I must dissent from this view on the principal basis that § 13–44, W.S.1957, 1973 Cum.Supp., as it existed for many years prior to the filing of Wyoming Security's application and as it continued after the 1973 amendment requiring the holding of hearings under the Wyoming Administrative Procedure Act, §§ 9–276.19 et seq., W.S.1957, 1973 Cum.Supp., in granting him the sole and exclusive authority to issue state bank charters, specifically enjoins upon the Examiner the duty "to inquire * * * into the convenience and needs of the community to be served by the proposed corporation". I think the record clearly and competently establishes that despite evidence adduced at the hearing showing the possibility of the issuance of a national bank charter to the contesting Wyoming Bancorporation, the Examiner failed to consider that possibility and therefore failed to comply with the statutory requirement imposed upon him.

I think that this is the case even if we hold that the Examiner, the district court, and this Court were required by niceties of administrative procedure to ignore the undisputed fact, brought to the attention of the Examiner by telephone call and by documents attached to its brief in opposition to the application of Wyoming Security, that on July 3, 1973 the Comptroller of the Currency gave preliminary approval to the issuance of a bank charter for Bank of Wyoming, N.A. I think it is the same if we are required to ignore the further undisputed fact, brought to our attention by counsel for the Examiner by attachment of documents to his brief in this Court, that the Federal Reserve Board had likewise approved the charter, thereby clearing the way for commencement of business by Bank of Wyoming, N.A.

If it is said that I am second guessing the Examiner on the basis of facts that he could not properly consider, my reply is that were the application by Bancorporation still pending, without action thereon by any national authority, it would nevertheless in my opinion be incumbent upon

the Examiner to inquire into the effects upon the banking community of Sheridan of the issuance of two bank charters. Certainly the possibility that this might happen was clearly brought out in the course of the hearing. Knowing that he has no legal or practical control over the acts of the national banking authorities and knowing that those authorities similarly have no control over his acts, I think that it was still his mandatory duty in the exercise of the discretionary power vested solely in him to consider that possibility because it would bear directly and importantly upon the need of the Sheridan community for the state bank charter.

In reaching this conclusion I accept as premises that the courts may set aside action of an administrative agency only where its action is "arbitrary or fraudulent[1] or where there is an illegal exercise of discretion; and the burden of proving arbitrary, illegal or fraudulent action is on the complainant". Marathon Oil Company v. Welch (Wyo.1963), 379 P.2d 832, 836.

It is also true that the principal function of the reviewing court is "to ascertain whether the administrative board's findings of fact are supported by substantial evidence", Johnson v. Schrader (Wyo.1972), 502 P.2d 371, 374, although basic findings of fact will not be implied from ultimate findings, Chicago and Northwestern Ry. v. Hillard (Wyo.1972), 502 P.2d 189, 193, and cases there cited.

The concept of burden of proof has a place in an administrative proceeding, Pan American Petroleum Corporation v. Wyoming Oil & Gas Conservation Commission (Wyo.1968), 446 P.2d 550, 555, and in administrative proceedings, "as in courts, the burden of proof rests upon complainants". Chicago and Northwestern Ry. v. Public Service Commission of Wyoming (1958),

79 Wyo. 343, 350, 334 P.2d 519, 521. This is entirely consistent with the general rule stated in First National Bank of Morrill v. Ford (1923), 30 Wyo. 110, 216 P. 691, 694 that "the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue * * *".

I do not believe that the majority intends to hold that the legislature has intended that the Examiner shall be without judicial supervision and direction in the determination of what is required of him under the law. As to whether action is to be considered arbitrary and capricious, it has been said in Marathon Oil Company v. Pan American Petroleum Corporation (Wyo. 1970), 473 P.2d 575, 577 that such action is "wilful and unreasoning action, without consideration and in disregard of facts and circumstances. Bishop v. Town of Houghton, 69 Wash.2d 786, 420 P.2d 368, 373". The agency must have before it information for the finding of those facts from which it pretends to act, *Johnson, supra,* Monahan v. Board of Trustees of Elementary School District No. 9, (Wyo.1971), 486 P.2d 235, 237, *Pan American Petroleum Corporation, supra,* and the agency may not "exclude from consideration facts and circumstances relative to its inquiry which upon due consideration may be of persuasive weight in the exercise of its discretion". Lake DeSmet Reservoir Company v. Kaufmann (1956), 75 Wyo. 87, 292 P.2d 482, 486, quoting from Am.Jur. Public Administrative Law § 148, p. 492, n. 6.[2] Arbitrary and capricious action does not arise only from action that is morally censurable but results from the failure to consider pertinent factors, J. Ray McDermott & Co., Inc. v. Hudson (Wyo.1962), 370 P. 2d 364, 370.

The examiner concluded that the proposed bank would "serve the convenience

---

1. I categorically exclude the suggestion that there was anything actually or constructively fraudulent in the Examiner's action.

2. Substantially the same statement is found in 2 Am.Jur.2d Administrative Law § 442, p.

250: "A failure to consider factors which the statute requires to be considered will avoid the determination, but the weight to be given particular factors usually rests in the discretion of the administrative agency * * *."

and needs of the community of south Sheridan, Wyoming, Big Horn and Story and surrounding unincorporated area", and the district court has held that the Examiner inquired into "the convenience and needs of the community to be served". Reluctant as I am to disagree with the district court in its determination that the Examiner made adequate findings concerning the essential prerequisites to issuing a charter, I am convinced that the Examiner has failed to give proper effect to the statutory mandate that before issuing a charter he shall inquire into "the convenience and needs of the community to be served by the proposed corporation". I believe that both the district court and the Examiner have failed to consider an essential and vital element in the issuance of bank charters, that is, the actual need of the whole community to be served by the bank, not merely the convenience of a small area, for additional banking services.

Conceding that the record may be said to justify the addition of one more bank in the Sheridan community, I believe that the Examiner has failed to consider the effect upon the economic health of the banking community of the possible addition of two banks. I would hold that this failure to consider the effect of two additional banks and the possible overbanking of the community is a direct failure to comply with the legislative mandate and constitutes arbitrary and capricious action on his part, without consideration and in disregard of facts and circumstances, Marathon Oil Company v. Pan American Petroleum, *supra.*

It seems fairly obvious from the record that it will be more convenient to the businessmen and residents in the south Coffeen Avenue area to have a bank at that point rather than a mile and a half further into the city. But this is not *need,* otherwise we might permit a bank on every street corner. The statute itself does not refer to the convenience of a small segment of the community; it refers to the need of the whole community and the record clearly shows that the community for this bank as well as the existing Bank of Commerce and First National Bank, and for the then potential Bank of Wyoming, N.A., was not and is not that little portion of the city within a few blocks of its particular location, but was and is all of Sheridan County and even into neighboring counties. Yet the Examiner refers only to a need for better service in the south Coffeen, Big Horn, and Story areas, ignoring the balance of the city and county.

I have no doubt that the danger of overbanking is what the legislature sought to protect against when it directed that the Examiner should inquire into the needs of the community. The question does not appear to have come up frequently in other jurisdictions, but pertinent decisions where need has been considered clearly indicate that bank charters should not be authorized merely on the basis of convenience without regard to the actual need therefor. Thus, in Schaake v. Dolley (1911), 85 Kan. 598, 118 P. 80, 85, where the statute directed the banking authority to investigate "the public necessity of the business in the community in which it is sought to establish the bank", the court observed: "An unnecessary bank in a community is not a thing of passive uselessness only, and so merely of no benefit. It is an active disturber of the financial peace, to the detriment of the public welfare * * *."[3]

---

3. This case is cited by Security as authority that where two applications of equal merit are filed the charter should be awarded to the one first filed. However, those two applications were filed with the same authority. Notwithstanding citation of this case, Security, as well as the Examiner, appears primarily to argue that priority is of no pertinence in the case, while Bancorporation strongly asserts that it was entitled to priority because it had the first *perfected* application. The majority opinion appears to award priority to Security —to which I do not object—but we have been referred to no state or federal legislation, decisions, or administrative rulings requiring abstention by either the state or the national authority in the case of multiple applications. The practical fact is that at the time the Examiner decided to issue the state charter he was well aware that, because of the duality

In State ex rel. Dybdal v. State Securities Commission (1920), 145 Minn. 221, 176 N.W. 759, 760, the court was concerned with a statute which required a finding that there was a "reasonable public demand for a bank in the location". It was said that the purpose of this statute was not to keep out other banks merely because the existing banks could sufficiently take care of the business. "Its purpose is not to deter competition or foster monopoly, but to guard the public and public interests against imprudent banking."

The question appears to have arisen in connection with action of the Comptroller of the Currency in issuing certificates for branch banks, particularly in North Carolina, and the federal district courts of that state have not hesitated to interfere with the Comptroller's action. Thus, in Bank of Haw River v. Saxon (D.C.M.D.N.C.1966), 257 F.Supp. 75, 79 the district court found that the service area of the proposed bank was served by existing banks offering a full range of services, "that no substantial public or business interest, need or necessity would be served by the establishment of the new bank; and that a new banking facility in the area would not be economically feasible", and granted injunction against the issuance of the certificate. Similarly, in Bank of New Bern v. Wachovia Bank & Trust Company, N.A. (D.C.E.D.N.C. 1972), 353 F.Supp. 643, 654 the court considered provisions of the North Carolina

law found to bear upon the Comptroller's powers. This law required consideration of such factors as whether the establishment of the branch or teller's window "will meet the needs and promote the convenience of the community to be served by the bank", with the added requirement that public demand be found to be such as to assure solvency. Finding that the size and strength of the parent bank were such as to assure the solvency of the branch, so that the only real question was the need and convenience of the community, and answering the argument that the Comptroller should be permitted to apply the expertise of his office in making the determination of need, the court made this statement, most pertinent to our own problem:

"* * * Where the choice is between conflicting evidence of future prospects, this is undoubtedly true. * * * But there should be some evidence that prospects for future economic growth are favorable. Here the evidence is at best speculative, and in the view of this court it falls short of establishing that the entry of a new bank into the New Bern market 'will meet the needs and promote the convenience of the community' at this time."

It was therefore determined that the findings of the Comptroller were not supported by substantial evidence and motion for summary judgment invalidating the certificate was granted.[4]

of banking systems permitting each agency to reach its own decision as to need for additional banking, his decision to issue a state charter might result in overbanking. Argument as to the priority of the applications, or whether the national authority should have abstained, is an exercise in futility. The fact is that it did not do so.

4. Notes and Comments, Bank Charter, Branching, Holding Company and Merger Laws: Competition Frustrated, 71 Yale L.J. 502 (1962) discusses at some length the factors bearing upon overcompetition and the denial of bank charters. It is pointed out that overzealous attempts at profit maximization lead to making loans to undependable borrowers to obtain higher interest rates because of

the greater risks. Too many risks lead to insolvencies and since the capital structure represents only a small portion of the assets of the bank the great burden of the insolvencies falls upon the depositors. "Since solvency is a function of profitability, and profitability a function of business transacted, both state and federal statutes permit entry only when a bank can develop sufficient business to cover costs plus a reasonable profit." I hasten to point out that I do not want this dissent in any way to indicate a view on my part that Security Bank, even with Bank of Wyoming, N.A. also in competition, would not be profitable and add to the banking needs of the community. All I say is that that question has not been considered.

I think that is the situation here. I agree with counsel for Bancorporation that "there is not a scintilla of evidence before the Examiner to indicate the feasibility of a fourth bank in Sheridan, Wyoming". Competent evidence supports the thesis that an additional bank in Sheridan is needed and within three years should be in a prosperous condition, but neither an investigation report submitted by Security nor the report on the Examiner's independent investigation consider the possibility that two banks would be added to the community and what their prospects would be. Nor do I find any oral testimony bearing upon the point. Under the circumstances I do not believe the question to be one of whether the Examiner has exercised a discretion and made an informed decision to issue a bank charter. I do not fault the Examiner's findings so far as they go, but would hold that when it appeared that there was a distinct possibility that the federal authorities were also going to issue a bank charter it was incumbent upon the Examiner, in the discharge of his statutory obligation to determine the need for an additional bank, to give consideration to this other possibility, take evidence on the matter, and exercise his judgment upon the question whether a state charter might result in an overabundance of banks to the detriment of the Sheridan community.[5]

In this case Security sought the issuance of the charter so it properly follows that it had the burden of showing facts establishing the need for issuance of a charter to it. That question could not be decided without consideration of Bancorporation's application and the probable results thereof. Therefore, it is unimportant whether the approval given to that application was final or only preliminary. Its *possible* issuance was a factor of the utmost importance in determining whether a state charter should also issue, and I think that in the proper exercise of his administrative discretion, at any time that information was presented to him concerning the existence of another application, even if to a different authority, the Examiner had the statutory duty to consider what effect approval of the other charter would have upon the Sheridan community should he elect to issue a state charter, and this regardless of what had been disclosed at the hearing. The issue was squarely before him whether the community could support two new banks, but the Examiner took no evidence and gave no consideration to the issue. I think it significant that there is no word of the Examiner referring to this national bank. He makes no finding with respect thereto and while it may perhaps be assumed that because he ordered the charter issued he tacitly found that it was of no importance or that the federal authorities might back away from issuing the national charter, there is nothing to show that, and the plain uncontroverted fact is that the Examiner has not made a record determination on a matter of vital importance in the exercise of his duty to protect the financial soundness of our banking system.

This dissent has already been too long, but I think that the basic difference between the majority and me is in our disagreement as to the function of the Examiner in the consideration of charter applications. I cannot accept § 9–276.26(d) and Torgeson v. Connelly (Wyo.1959), 348 P. 2d 63, cited by the majority as dealing with the matters that an administrative agency

5. Attorney for the Examiner in this Court in part defends the issuance of the charter on the basis that after the matter was heard in the district court the Federal Reserve Board approved the issuance of the national charter. A letter from the board attached to his brief states: "It appears from the record that the addition of two banks to the area may create a temporary condition of overbanking. However, the market's rate of growth suggests that such condition will not be serious and will be of relatively short duration. In the Board's judgment, Applicant's [Bancorporation's] *de novo* entry may be expected to serve the longer-run competitive interest of the market." This information, of course, may be of importance, but it is not the finding of the Examiner and only he, under state law, may make that determination to protect the state interest.

may officially notice, as being determinative of what an administrative official must do in response to a specific statutory requirement that *he inquire*. I do not believe that he sits in this case merely as an arbiter to decide which of two contestants is to receive the plum. While I would concede that Bancorporation did not seem particularly eager at the hearing to press the point of overbanking, nevertheless the question was squarely raised in its memorandum filed with the Examiner prior to his decision. This would seem to me to be pretty close to the point of United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 68–69, 97 L.Ed. 54, and other cases cited by the majority, that "orderly procedure and good administration require that the objections to the proceedings be made while it has opportunity for correction", and Bancorporation's memorandum points out that there is no evidence as to the probable success of two new banks in Sheridan. An application to reopen the proceedings for the purpose of considering evidence as to the effect of the Comptroller's decision might have been a more technically correct procedure, and while I do not agree with Bancorporation's statement that the application by Security was "rendered moot by the action of the Comptroller" I do think that it effectively raised a red flag which should have caused the Examiner to make further investigation. If I am correct in my interpretation of our previous decisions as placing the burden of proof upon Security, the applicant for the charter, to show the need for that particular bank, it also had an obligation to be sure to make a record that would justify a finding as to that need.

In my opinion, however, the issue is not one of mere procedure, burden of proof, or taking official notice. The statutory right of the Examiner to be the sole judge whether a charter shall issue is at all times subject to the qualification that he must act according to law and not arbitrarily. A decision reached upon a record that omits facts essential to the determination is one taken without sufficient information and is therefore arbitrary, *Monahan, supra.*

I would not suggest that an exercised discretion is to be reviewed as to the merits of the decision and I would not want this dissent to be taken as an indication of any belief on my part that overbanking will result in the Sheridan community. That would be a question for the Examiner to decide, but since I am of the opinion that he has failed to consider a vital and important element essential to the public interest and his right to issue an additional charter, I therefore believe that within the most restrictive concepts of judicial review of administrative action the matter should be remanded to him for the purpose of considering the possibility of overbanking in the Sheridan community.

## ON PETITION FOR REHEARING

## PER CURIAM:

Wyoming Bancorporation has filed herein its "Petition for Reargument", requesting the court to withdraw its opinion in the matter and schedule the appeal for reargument before Justices Guthrie and McClintock (both of whom participated in the decision handed down herein on October 16, 1974) and a third justice or judge as may be designated, or, in the alternative, before a panel of five judges. The basis of the application is the hospitalization of Mr. Justice McIntyre, who was the third member of the panel hearing oral argument upon the case and whose concurrence in the majority opinion as written by Mr. Justice Guthrie is questioned.

This Court has no rule and has rendered no decision pertaining to reargument but our Rule 14 does permit an application for rehearing. In Harrington v. Denny (D.C. W.D.Mo.1933), 3 F.Supp. 584, 588 it was said:

"A very fine and I think nonexistent distinction is drawn when it is contended, as plaintiff contends here, that an order granting a reargument is one thing and an order granting a rehearing is another

**446**

thing. After all, what is a rehearing? In an appellate court it is nothing more than a reargument. It was so ruled by the Supreme Court of Missouri in just those words in Granite, etc., Co. v. Park View Realty & Improvement Co. et al, supra [270 Mo. 698, 196 S.W. 1142]. In that case it was said (270 Mo. loc. cit. 700, 196 S.W. 1142, 1143) 'that the term "rehearing" indicates, i. e., that the case is for reargument and resubmission.'"

We therefore treat the petition as an application for rehearing. We have previously recognized that our rule does not specify the grounds upon which a rehearing will be granted, but we would concede that the hospitalization of a justice who has heard the oral argument as a member of a three-justice panel as permitted by Article 5, § 4(a) of the Wyoming Constitution, would be and is proper basis for concern of a litigant and could be basis for rehearing where the panel is split and there is a dissenting opinion, provided that the judge who became hospitalized was thereby incapacitated from effective considera-

tion of the written briefs and record in the case and the oral argument which he has heard.

This is not such a case. Mr. Justice McIntyre, as was his continuing practice, carefully considered the briefs in the matter prior to the oral argument, participated actively in the argument, and in oral conference following the argument, and specifically considered and rejected an opinion of Justice McClintock, tendered by him as the opinion of the panel, and then considered and joined in the opinion tendered by Justice Guthrie. We therefore have no hesitation, with the complete agreement of the dissenting justice, in stating that concurrence by Justice McIntyre, whose hospitalization has been of such a nature as not to preclude conference with other judges and thoughtful consideration of the facts and issues involved in the cause, represents a thoughtful and active concurrence in the majority opinion as heretofore rendered and filed herein.

The petition for rehearing is therefore denied.